IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| STEPHEN O. FOWOSE, * | |
| * | |
| Plaintiff, * | |
| * | Civ. No.: MJM-22-2784 |
| v. * | |
| * | |
| BANK OF AMERICA, N.A., * | |
| * | |
| Defendant. * | |

\* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Stephen O. Fowose brings this action against Bank of America, N.A. ("BANA" or "Defendant"), alleging breach of contract and violations of the Truth in Lending Act. Am. Compl. ECF No. 18. Plaintiff's claims arise out of a 2002 mortgage agreement and subsequent 2003 accelerator agreement between the parties. *Id.* ¶¶ 4, 15. Plaintiff filed his initial pro se Complaint in the Circuit Court for Baltimore County, Maryland on August 3, 2022. *Id.* On October 28, 2022, Defendant removed the case to this Court. ECF No. 1. Counsel for Plaintiff entered his appearance on February 14, 2023. ECF No. 16. Thereafter, Plaintiff filed the operative Amended Complaint on March 16, 2023.[1]

Currently pending is Defendant's Motion to Dismiss (the "Motion"). ECF No. 23. The Motion is fully briefed, and no hearing is necessary. Loc. R. 105.6 (D. Md. 2023). For the reasons stated below, the Court will GRANT Defendant's Motion to Dismiss, and the Amended Complaint will be dismissed without prejudice.

---

[1] Plaintiff subsequently sought to amend his complaint. ECF No. 30. This Court granted Plaintiff's request to file a motion for leave to amend by January 19, 2024. ECF No. 31. Plaintiff never filed the motion.

I.  **BACKGROUND**

The following facts are drawn from the Amended Complaint, documents incorporated into the Amended Complaint by reference, and public records.[2]

On October 28, 2002, Plaintiff executed a mortgage note (the "Note") (ECF No. 18-1) for $200,998.00 for a term of 30 years at 4.128% interest. Am. Compl. ¶ 4. The deed of trust (ECF No. 18-2), secured by Defendant,[3] indicates the sale price was $200,998.00. *Id.* ¶¶ 5–6. Plaintiff recalls that he put down approximately $6,000 as a down payment. *Id.* ¶ 14. The Truth in Lending Act ("TILA") disclosure (the "Disclosure") (ECF No. 18-4) indicates the annual percentage rate ("APR") was 4.468% with $192,857.64 financed. *Id.* ¶ 7. The total payment was to be $350,672.40, with monthly payments of $974.09. *Id.*

On October 30, 2003, Plaintiff and Defendant entered into an "Accelerator Agreement" (ECF No. 18-5), which "called for half payments every [14] days throughout a calendar year, paying a total of [13] months per year. The [13th] month of payment would be credited against the principal annually . . . ." *Id.* ¶ 15. Under the Accelerator Agreement, Plaintiff also elected to "apply an extra $200.00 [to his principal] every [14 days] so he could pay down the loan faster . . . ." *Id.*

---

[2]  When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must take the factual allegations in the complaint as true, *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016), and consider documents either attached to the complaint as exhibits or incorporated by reference, *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). A court may also "take judicial notice of matters of public record" when considering a motion to dismiss. *Corbitt v. Baltimore City Police Dep't*, Civ. No. RDB-20-3431, 2023 WL 3793997, at *3 n.5 (D. Md. June 2, 2023).

[3]  Defendant serviced Plaintiff's loan from its inception until December 21, 2010, then again after March 20, 2012. Am. Compl. ¶¶ 19–20. From December 21, 2010, through March 20, 2012, the loan was serviced by M&T Bank. *Id.* ¶ 19.

2

¶ 37.[4] "There are no records that BANA" applied the additional $200.00 election towards the principal. *Id.* ¶ 39. Rather, Defendant either deducted the $200.00 and failed to apply it to the principal and/or Defendant should have but did not deduct the $200.00 at all. *Id.* ¶ 41.

On October 28, 2002, Defendant sent Plaintiff a "Welcome Letter" (ECF No. 18-9) "explaining the breakdown of [Plaintiff's] payments under the Accelerator Agreement." *Id.* ¶ 29.[5] The Welcome Letter included a $50.00 monthly payment categorized as "Other." *Id.* ¶ 30–34. Plaintiff generally alleges the $50.00 payments should have been applied to the principal on the mortgage. *Id.* ¶ 33–34. Plaintiff "frequently complained" that Defendant was incorrectly applying his payments. *Id.* ¶ 16.

Utilizing Microsoft Excel,[6] Plaintiff conducted four calculations to "test the TILA Disclosure." *Id.* ¶ 8. Specifically, Plaintiff utilized four figures provided in the Note and Disclosure: the Note's interest rate (4.128%); the Disclosure's APR (4.468%); the Note's principal ($200,988.00); and the Disclosure's amount financed ($192,857.04). *Id.* at ¶¶ 9–13. Plaintiff's calculations revealed different repayment plan outcomes (i.e., different monthly and total payments) than those provided in the Disclosure. *Id.*

---

[4] Under "Method of Payment," the Accelerator Agreement reads: "If you would like to have and [*sic*] additional amount of money applied towards your principal automatically withdrawn from your bi-weekly draft, please indicate that amount." ECF No. 18-5 at 1. On the following line, Plaintiff wrote "$200.00 (two hundred dollars only)." *Id.*

[5] It is unclear how the Welcome Letter, dated October 28, 2002, could explain the breakdown of payments under the Accelerator Agreement, which was signed over a year later on October 30, 2003.

[6] The Amended Complaint states that the "formula" used in Microsoft Excel is "=PMT(Interest_Rate/12,Term,Principal) . . . ." Am. Compl. ¶ 8. The Court understands that the "PMT" function in Excel can be used to "calculate[] the payment for a loan based on constant payments and a constant interest rate." *PMT Function*, MICROSOFT SUPPORT, (last visited May 21, 2024) https://support.microsoft.com/en-us/office/pmt-function-0214da64-9a63-4996-bc20-214433fa6441; *see also In re Settlers' Hous. Serv.*, 505 B.R. 483, 502 (Bankr. N.D. Ill. Jan. 16, 2014) (utilizing PMT formula).

Finally, regarding transactions that began in 2012,[7] Defendant "made various entries that violated" 12 C.F.R. § 1026.36 ("Regulation Z"), TILA's implementing regulation. *See Boardley v. Household Fin. Corp. III*, 39 F. Supp. 3d 689, 704 (D. Md. 2014). Thus, Defendant "violated [Regulation Z] through their accounting practices." Am. Compl. ¶ 48(g).

"BANA has refused to provide [Plaintiff] with his banking records dating back to 2002." *Id.* ¶ 40. "Specifically, BANA did not provide payment records from December 1, 2002[,] through October 2006." *Id.* ¶ 13. The Amended Complaint, however, includes 50 pages of Plaintiff's mortgage history from January 3, 2006, through January 5, 2022. ECF No. 18-6 (sometimes referred to as "History of Payments").

The Amended Complaint contains three counts: two for breach of contract, and one for violations of TILA and Regulation Z.[8]

## II.  LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).

A motion to dismiss under Rule 12(b)(6) constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a 12(b)(6) motion to

---

[7]  Presumably, the Amended Complaint is referring to the transactions that started during Defendant's second period of servicing Plaintiff's loan beginning in March 2012. Am. Compl. ¶¶ 19–46.

[8]  Plaintiff's response in opposition to the Motion states that Plaintiff's "action is not based on improper TILA disclosure requirements but [the Amended Complaint] cited the TILA issue to help explain the problems with the loan from the loan's inception." ECF No. 24 at 2. It is therefore unclear whether Plaintiff seeks relief under TILA. Nonetheless, the Court will address the purported TILA violation alleged in Count III.

dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A complaint need not include "detailed factual allegations" to satisfy Rule 8(a)(2), but it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted). Furthermore, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (cleaned up). A complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* "[T]ender[ing] 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

When considering a motion to dismiss, a court must take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). At the same time, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to

5

reasonably infer" the defendant's liability for the alleged wrong and the plaintiff's entitlement to the remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert denied*, 566 U.S. 937 (2012).

Ordinarily, a court "is not to consider matters outside the pleadings or to resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). But courts may "consider documents that are explicitly incorporated into the complaint by reference" or "document[s] submitted by the movant" that are "integral to the complaint" if "there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (citations omitted). Further, "courts may take judicial notice of publicly available records without converting a motion to dismiss to a motion for summary judgment." *Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 502–03 (D. Md. 2019).

### III. DISCUSSION

In its Motion, Defendant argues, *inter alia*, that the breach of contract claims and TILA claim are barred by three-year and one-year statutes of limitations, respectively. ECF No. 23 at 8–10. A court "will grant a motion to dismiss based on a statute-of-limitations defense 'only if the time bar is apparent on the face of the complaint.'" *Manion v. N.C. Med. Bd.*, 693 Fed. App'x. 178, 180 (4th Cir. 2017) (quoting *Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017)). The Court can therefore only grant Defendant's Motion based on the statute of limitations if it is clear from the face of the Complaint that the statutes have run.

#### A. Breach of Contract (Counts I & II)

The Amended Complaint includes two counts for breach of contract. Count I relates to the "application of the unnamed $50.00" identified in the Welcome Letter and in the History of Payments. Am. Compl. ¶¶ 29–34. Plaintiff does not identify specific terms of either the Note or

Accelerator Agreement that Defendant breached in Count I. Rather, Plaintiff generally alleges Defendant should have but did not apply the $50.00 deduction to his mortgage principal. *Id.* ¶ 33. In Count II, Plaintiff alleges Defendant breached the Accelerator Agreement by failing to apply $200.00 biweekly towards the mortgage principal, as elected by Plaintiff in the Accelerator Agreement. *Id.* ¶¶ 35–43.

Maryland law generally applies a three-year statute of limitations for breach of contract claims. Md. Code Ann., Cts. & Jud. Proc. § 5-101; *see also Dual Inc. v. Lockheed Martin Corp.*, 857 A.2d 1095, 1099 n.2 (Md. 2004) (applying three-year statute of limitations).[9] The cause of action "typically accrues at the time of the breach." *Shailendra Kumar, P.A. v. Dhanda*, 43 A.3d 1029, 1035 (Md. 2012). Nonetheless, the discovery rule applies such that the statute of limitations will not start running until the plaintiff "knew or should have known" of the breach. *Lumsden v. Design Tech Builders, Inc.*, 749 A.2d 796, 801 (Md. 2000) (citing cases). A plaintiff reasonably should have known of the breach if he had "knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry [thus, charging the individual] with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued." *Id.* (citation omitted). The Court must draw all reasonable inferences in Plaintiff's favor, and Defendant has the burden of proving the affirmative defense of statute of limitations. *See, e.g.*, *Goodman v. PraxAir, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).

In this case, Plaintiff filed his initial Complaint in state court on August 3, 2022. ECF No. 1. Thus, Plaintiff's breach of contract claims are limited to breaches occurring on or after August

---

[9] Plaintiff correctly recognizes that Maryland law does "not extend a statute of limitations to foreclosure actions." *Daughtry v. Nadel*, 242 A.3d 1158, 1166 (Md. 2020). But this is an action for breach of contract; thus, the three-year statute of limitations applies.

3, 2019.[10] The Amended Complaint does not state when the alleged breaches occurred. Regarding Count I—pertaining to the $50.00 payment—there has been a "Regular Payment" of $50.00 since at least January 3, 2006. ECF No. 18-6 at 2. The charge has been withdrawn approximately monthly since at least that date. *Id.* Further, the $50.00 charge was itemized on the Disclosure. Thus, the statute of limitations bars Count I. *See Miller v. Pac. Shore Funding*, 224 F. Supp. 2d 977, 990 (D. Md. 2002) ("[A]t the closing of the loan, [the plaintiff] had sufficient knowledge of circumstances indicating he might have been harmed. The allegedly illegal fees were itemized on the face of the loan documents he signed on that date.").

As to Count II—pertaining to Plaintiff's request that Defendant apply an extra $200.00 to his principal biweekly—Plaintiff signed the Accelerator Agreement in October 2003. Am. Compl. ¶ 15. Plaintiff's payment amounts varied between 2006 and 2022, but the payments were withdrawn approximately monthly throughout that period. As Defendant recognizes, the Amended Complaint does not reference any dates as to when Defendant allegedly breached the Accelerator Agreement. Plaintiff instead states that, "[d]uring discovery[,] Fowose will seek his banking records from BANA." Am. Compl. ¶ 42. Plaintiff already possesses mortgage payment records dating back to January 2006, yet he does not identify the date of any breach that occurred since that time. Rather, the Amended Complaint appears to allege that Defendant has failed to apply the $200.00 payments to the mortgage principal since the inception of the Accelerator Agreement (or, at least, since Defendant began re-servicing the loan in 2012).[11]

---

[10] Plaintiff alleges that Defendant "has refused to provide him with his banking records dating back to 2002." Am. Compl. ¶ 40. But records from 2002 through 2006 could not overcome the three-year statute of limitations, as any claims alleging a breach of contract occurring during those years would be long expired.

[11] Indeed, Plaintiff concedes that he "frequently complained that BANA did not apply his payments correctly." Am. Compl. ¶ 16.

Conceivably, the Amended Complaint asserts that Defendant's breach is continuing every month that it fails to apply the $200.00 payment to Plaintiff's mortgage. Under the theory of continuing breach, "violations that are continuing in nature are not barred by the statute of limitations merely because one or more of them occurred earlier in time." *MacBride v. Pishvaian*, 937 A.2d 233, 240 (Md. 2007). But "Maryland's theory of continuing breach of contract is a limited one . . . ." *Mills v. Galyn Manor Homeowner's Ass'n*, 198 A.3d 879, 889 (Md. Ct. Spec. App. 2018). "Continuing violations that qualify under this theory are continuing unlawful acts, for example, a monthly over-charge of rent, not merely the continuing effects of a single earlier act." *MacBride*, 937 A.2d at 240.

In *King v. Ameriquest Mortg. Co.*, the plaintiff argued that his claim was not barred by the statute of limitations because, *inter alia*, the mortgage lender's "violations [were] continuing violations that reoccur[ed] each month that [the plaintiff] [was] subject to the allegedly fraudulent mortgage." Civ. No. PJM 09-9772009, 2009 WL 3681688, at *2 (D. Md. Oct. 29, 2009). The Court disagreed and held that "[t]he payment of [one's] mortgage each month does not result in continuous fraud." *Id.* at *3; *see also Miller v. Pac. Shore Funding*, 224 F. Supp. 2d 977, 990 (D. Md. 2002) (allegedly illegal fees collected monthly by a lender "are no more than the lingering, ongoing, continuing aspects of a unitary action initiated" outside the statutory period). In both *King* and *Miller*, the Court held that "the limitations clock began to tick on the closing date when the allegedly illegal loan was entered into, and when the allegedly fraudulent fees were imposed." *King*, 2009 WL 3681688 at *3; *Miller*, 224 F. Supp. 2d at 990 ("[A]t the closing of the loan, [the plaintiff] had sufficient knowledge of circumstances indicating he might have been harmed. The allegedly illegal fees were itemized on the face of the loan documents he signed on that date.").

9

The theory of continuing breach cannot save Counts I and II of the Amended Complaint in this case. Plaintiff has known about the $50.00 fee discussed in Count I since the inception of the mortgage; indeed, it was included on the Disclosure. Further, the Amended Complaint alleges Defendant has misapplied or failed to apply the $200.00 at issue in Count II since at least 2012. Similar to *King* and *Miller*, the limitations clock on claims pertaining to the $200.00 election began to tick when the Accelerator Agreement was entered into. The discovery rule applies to breach of contract claims, but the limitations period begins running when the plaintiff "knew or should have known" of the breach. *Lumsden*, 749 A.2d at 801 (Md. 2000). Here, Plaintiff does not allege that he lacked access to his own financial information or was not aware of the amounts of payments that were being made toward his mortgage during the relevant period. Together, these facts—which are apparent from the face of the Complaint—demonstrate that a "person of ordinary prudence on inquiry" would have discovered the alleged breaches within the three-year limitations period. The statute of limitations therefore bars Counts I and II.

### B. Violations of TILA (Count III)

Plaintiff's allegations regarding TILA and Regulation Z are similarly barred by the applicable statute of limitations. The Regulation Z claims can be broken into two categories: (1) deficient disclosure; and (2) misapplied payments. *First*, the Amended Complaint suggests the TILA Disclosure was deficient, providing several calculations that indicate that the figures provided in the Disclosure were inaccurate. Am. Compl. ¶¶ 7–14. *Second*, Plaintiff claims, "In viewing transactions commencing in 2012 . . . BANA made various entries that violated [Regulation Z]." Am. Compl. ¶ 48. Plaintiff alleges that, "[o]n October 26, 2012[,] BANA removed . . . $208.40 from [Plaintiff's mortgage's] unapplied funds but did not credit Fowose for anything. In other words, it appears that BANA simply took the money . . . ." Am. Compl. ¶ 48(c).

Plaintiff further alleges Defendant misapplied Plaintiff's funds in November 2012. *Id.* ¶ 48(d)–(f). Thus, Plaintiff alleges, "BANA effectively violated [Regulation Z] through their accounting practices." *Id.* ¶ 48(g). The Amended Complaint does not state how the at-issue transactions violated Regulation Z. However, Plaintiff's claims most likely arise under Regulation Z, 12 C.F.R. § 1026.36(c)(1)(i), which states that "[n]o servicer shall fail to credit a periodic payment to the consumer's loan account as of the date of receipt . . . ."

Under 15 U.S.C. § 1640(e), "any action for monetary damages under TILA can be brought . . . within one year from the date of the occurrence of the violation . . . ." *Rice v. PNC Bank, N.A.*, Civ. No. PJM 10-07, 2010 WL 1711496, at *2 (D. Md. Apr. 26, 2010). "This same one-year statute of limitations applies to violations of Regulation Z." *Id.* (citing 12 C.F.R. § 226.1(e) (2010)).[12] Again, Plaintiff filed his initial Complaint in state court on August 3, 2022. ECF No. 1. Thus, Plaintiff's TILA claims are limited to violations occurring on or after August 3, 2021.

Plaintiff's "deficient disclosure" claims revolve around the Note, which was signed on October 28, 2002, and the associated TILA Disclosure. Am. Compl. ¶¶ 4, 45–47. Any claims based upon alleged deficiencies in the Disclosure are barred by the statute of limitations because Plaintiff obtained the disclosure in 2002. Thereafter, he had one year to file a claim regarding any deficiencies to that Disclosure. *See Davis v. Edgemere Finance Co.*, 523 F. Supp. 1121, 1123 (D. Md. 1981) (Section 1640(e)'s "one-year limitations period begins to run from the date the loan agreement is entered into. . . . The fact that the violation continues after the credit is extended does

---

[12] Fraudulent concealment can toll the statute of limitations for TILA claims. *See, e.g.*, *Elman II v. JP Morgan Chase Bank, N.A.*, Civ. No. PJM 10-31, 2010 WL 2813351 (D. Md. July 13, 2010). Plaintiff does not allege any fraudulent concealment in this action. Further, as the Fourth Circuit has explained, "the fraudulent concealment doctrine tolls the statute of limitations until the plaintiff in the exercise of reasonable diligence discovered or should have discovered the alleged fraud or concealment." *Browning v. Tiger's Eye Benefits Consulting*, 313 F. App'x. 656, 663 (4th Cir. 2009) (internal quotation marks and citation omitted).

not toll or otherwise extend the limitations period.") (internal quotation marks and citation omitted); *Polis v. Am. Liberty Fin., Inc.*, 237 F. Supp. 2d 681, 684 (S.D.W.V. 2002) ("The violation 'occurs' when the transaction is consummated. Nondisclosure is not a continuing violation for purposes of the statute of limitations . . . .") (citation omitted).

Regarding the "misapplied payments" claims, the Amended Complaint provides two examples—from October and November 2012—of Defendant allegedly failing to apply Plaintiff's funds to his mortgage principal. Am. Compl. ¶ 48. The Amended Complaint states that the violative transactions "commenc[ed] in 2012" but does not allege any continuing violation beyond 2012. *Id.* Moreover, like the breach of contract claims, any TILA claims alleging a "continuing violation" into the statutory period will not toll the statute of limitations because the limitations period begins running when the plaintiff "knew or should have known" of the breach. *Lumsden*, 749 A.2d at 801. Here, Plaintiff does not allege he was unaware of the amounts of payments being made toward his mortgage and does not allege any breach that occurred beyond 2012. Accordingly, Count III is barred by the statute of limitations.

### IV.   CONCLUSION

For the reasons stated herein, Defendant's Motion to Dismiss (ECF No. 23) will be GRANTED, and the Amended Complaint shall be dismissed without prejudice.

A separate Order will issue.

June  12 , 2024

_____
Matthew J. Maddox
United States District Judge